IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

WILLIE MAE MOORE          **PLAINTIFF**

VS.            **CAUSE NO. 4:07CV5-M-B**

WAL-MART STORES, INC.
AND JOHN DOES 1-5         **DEFENDANTS**

*AND*

WAL-MART STORES, INC.    **DEFENDANT/THIRD-PARTY PLAINTIFF**

VS.

PUBLIC PAY PHONE COMPANY,
ROBERT P. SCHMIDT AND
JOHN DOES A-B       **THIRD-PARTY DEFENDANTS**

THIRD-PARTY DEFENDANTS' POST-TRIAL BRIEF IN OPPOSITION TO
THIRD-PARTY PLAINTIFF WAL-MART STORES, INC.'S
CLAIMS FOR ATTORNEYS' FEES AND EXPENSES

COME NOW, Third-Party Defendants, Public Pay Phone Company and Robert P.

Schmidt (collectively, "Public Pay Phone"), by and through counsel, and submit this, their Post-

Trial Brief in Opposition to Third-Party Plaintiff, Wal-Mart Stores, Inc.'s ("Wal-Mart"), Claims

for Attorneys' Fees and Expenses.

I. **INTRODUCTION**

At the outset of its post-trial brief in support of attorney's fees [Doc. 129], Wal-Mart

states as follows:

> Defendant submits the jury's verdict in favor of Defendant confirms Wal Mart Stores,
> Inc. was not negligent in any manner and did not cause the subject incident with Plaintiff.
> Therefore, Third Party Defendant is obligated under the terms of the contract among
> these parties to reimburse the attorney's fees and legal expenses Defendant incurred
> because of the claims filed by Plaintiff arising out of the operation of the subject
> payphone and its enclosure.

See *Wal-Mart's Brief*, at 1.

In analyzing the first sentence of the preceding passage, Public Pay Phone agrees that the

jury returned a verdict in favor of Wal-Mart, which necessarily means that the Plaintiff failed to

meet the burden of proof on one of the elements of her negligence claim -- duty, breach,

causation and/or damages -- against Wal-Mart.[1] This verdict, however, cannot be summarily

exaggerated to reach the broader conclusion drawn in the second sentence -- that Wal-Mart is

contractually entitled to recover the attorneys' fees and expenses incurred in this case from

Public Pay Phone.[2] As with any contractual claim, Wal-Mart must prove by a preponderance of

---

[1] In its post-trial brief, Wal-Mart states that it "anticipates Public Payphone/Schmidt will continue their same argument against an award of attorney's fees by claiming Wal-Mart was somehow negligent despite the jury's verdict." See *Wal-Mart's Brief*, at 6. Contrary to this assertion, the jury's verdict does not impact Public Pay Phone's argument. As set forth herein, the mere fact that the jury did not find Wal-Mart negligent does not establish any right to attorneys' fees under the subject agreement. Rather, Wal-Mart must still establish that its claim for attorneys' fees is supported by the express terms of the contract.

[2] Wal-Mart's post-trial brief further states that "[w]ithout waiving its alternative common law indemnity claim or right to trial by jury on such alternative claim, Defendant request [sic] the Court fully reimburse it for attorneys [sic] fees and expenses which would render the common law indemnity claim moot and streamline the resolution of this dispute to a final judgment without the need for another trial on the remaining claims." See *Wal-Mart's Brief*, at 2. This statement suggests that Wal-Mart believes it still has some common law right to either indemnification and/or attorneys' fees. As a practical matter, however, any claim to for indemnification, either contractual or otherwise, was negated once the jury returned a verdict for the defense. In the absence of any damages award, there is simply no amount to be indemnified.

As regards Wal-Mart's claim for attorneys' fees, Mississippi law has long-recognized that there is no common-law right to recover attorneys' fees, both in terms of Wal-Mart's defense of the Plaintiff's liability claim, and its prosecution of its Third-Party claims against Public Pay Phone. See *City of Laurel v. Bush,* 238 Miss. 718, 729, 120 S0.2d 149, 155 (1960) ("'As a general rule, *in the absence of any contractual or statutory liability therefore, attorneys' fees and expenses incurred by the plaintiff or which the plaintiff is obligated to pay, in the litigation of his claim against the defendant, aside from usual court costs, are not recoverable as an item of damages … [n]or are attorneys' fees and other expenses of former litigation, particularly suits prosecuted by the plaintiff against the defendant, recoverable in a subsequent action.*'") (emphasis added) (quoting 15 AM. JUR., *Damages*, p. 550, par. 142). Moreover, both parties agreed to allow this Court to serve as the finder of fact on any lingering factual issues, such that Wal-Mart's reference to the potential "need for another trial" is irrelevant, as it *already* has waived the right to an additional jury trial.

the credible evidence that the relief it seeks is provided for under the terms of the contract, and that it further has satisfied its own contractual requirements, including any conditions precedent. The evidence presented at trial establishes that Wal-Mart did not, and cannot, satisfy either of these prerequisites. Because Wal-Mart cannot establish that the claims asserted by the Plaintiff fall within the scope of those for which the recovery of attorney's fees is provided by the agreement, and further cannot demonstrate that is has satisfied its own conditions precedent to any such recovery, Wal-Mart's claims for attorneys' fees and expenses fail, and judgment in favor of Public Pay Phone is both warranted and appropriate as a matter of fact and law.

## II. WAL-MART CANNOT ESTABLISH THAT THE SUBJECT AGREEMENT PROVIDES ANY BASIS TO RECOVER THE ATTORNEYS FEES AND EXPENSES INCURRED IN DEFENDING PLAINTIFF'S LIABILITY CLAIMS AND/OR PROSECUTING ITS THIRD-PARTY CLAIMS

As acknowledged in Wal-Mart's post-trial brief, Paragraph 17(b) of the parties' agreement "provides that any disputes among the parties will be governed by California law." See *Wal-Mart's Brief*, at 2. Under California law, it is well-established that, where the terms of a contract are clear and unambiguous, the contract must be enforced as written. *County of San Diego v. Ace Property & Cas. Co.*, 37 Cal.4th 406, 415, 118 P.3d 607, 612 (Cal. 2005); *AIU Ins. Co. v. Superior Court*, 51 Cal.3d 807, 822, 799 P.2d 1253, 1264 (Cal. 1990); *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 190 Cal. App. 4th 944, 956, 135 Cal. Rptr. 2d 505, 514 (Cal. App. 4 Dist. 2003) (citing Cal. Civ. Code § 1638).[3] "Under California law, the fundamental goal of contract interpretation is to give effect to the mutual intent of the parties as it existed at the time of contracting." *U.S. Cellular Inv. Co. v. GTE*

---

[3] It should be observed that California law and Mississippi law are virtually identical in the context of contractual interpretation. See *Shaw v. Burchfield*, 481 So.2d 247, 252 (Miss. 1985) (holding that where terms of contract are clear and unambiguous, contract must be enforced as written); see also *Barnett v. Getty Oil Co.*, 266 So.2d 581, 586 (Miss.1972) ("[T]he court should look solely to the instrument and give same effect as written.").

*Mobilnet, Inc.*, 281 F.3d 929, 934 (9th Cir. 2002).[4] Such intent is to be inferred, if possible, solely from the written provisions of the contract. *Id.* Similarly, "the words of a contract are to be understood in their ordinary sense." *Muzzi v. Bel Air Mart*, 171 Cal. App. 4th 456, 465, 89 Cal. Rptr. 3d 632, 637 (Cal. App. 3 Dist. 2009).

Under California law, "[p]arties may not be held beyond the express terms of the agreement [a]nd the document may not be given a strained and unnatural construction to suit the seeming need of some isolated case." Cal. Jurisprudence 3d § 42 (Dec. 2007) (citing *Tischhauser v. Jarvis*, 95 Cal. App. 524, 273 P. 66 (1928); *Van Derhoof v. Chambon*, 121 Cal. App. 118, 8 P.2d 925 (1932)). An indemnity provision of a contract is construed under the same general rules governing interpretation of other contracts with "a view to determining the actual intent of the parties." Cal. Jurisprudence 3d at § 41; see also *Wilshire-Doheny Assoc. Ltd. V. Shapiro*, 83 Cal. App. 4th 1380, 100 Cal. Rptr.2d 478 (2d Dist. Cal. 2000). The extent of the duty to indemnify is determined from the contract. *Id.* Moreover, "in a contractual indemnity action, the indemnitee must prove that liability is covered by the contract, that liability existed, and the extent thereof." *Peter Culley & Associates v. Superior Court*, 10 Cal. App. 4th 1484, 1498, 13 Cal. Rptr. 2d 624, 633 (Cal. App. 1st Dist. 1992).

The contractual provision upon which Wal-Mart bases its claims for attorneys' fees provides as follow:

---

[4] Similarly, under Mississippi law, Courts are not "so concerned with what the parties may have meant or intended but rather, with what they said, for the language employed in a contract is the surest guide to what was intended." *Shaw*, 481 So.2d at 252; see also *Facilities, Inc. v. Rogers-Usry Chevrolet, Inc.*, 908 So.2d 107, 111 (Miss. 2005). Further, where the terms of a contract are clear and unambiguous, court should not enlarge the terms of the contract by needless construction. *Wagner v. Mounger,* 253 Miss. 83, 90, 175 So.2d 145, 148 (1965); see also *In re Estate of Fitzer*, 881 So.2d 164, 169 (Miss. 2003) ("The reviewing court is not at liberty to infer intent contrary to that emanating from the text at issue.").

4

Provider [Public Pay Phone] agrees to indemnify, defend, and save Company [Wal-Mart] ... harmless against each and every claim, demand, cause of action, loss damage, injury or lawsuit (including all associated attorneys' fees) (collectively a "Claim") relating to liability for bodily injury or property damage arising from, or alleged to have arisen from or related to **(a) the operation of a Public Payphone provided under this Agreement; (b) any actual or alleged negligence or dishonesty of, or any actual or alleged act of commission or omission by [Public Pay Phone] or any of its employees, agents, or subcontractors in performance of this Agreement; (c) any breach by [Public Pay Phone] of its obligations hereunder;** or (d) any alleged patent, copyright, or trademark infringement or unauthorized use of trade secrets or other proprietary rights in connection with a Public Telephone provided under this agreement. However, this indemnification shall not apply in the event the injury or damage arises out of or is caused by the negligence or willful conduct of an indemnified party. An Indemnified Party may retain counsel and defend such Claim at [Public Pay Phone's] expense if such Indemnified Party, in its sole discretion, believes that [Public Pay Phone] will or has failed to comply with any of the terms or conditions of this Section 5.

See *Trial Exhibit TPD-1* (*Exhibit "A"* hereto), at ¶ 5 ("Indemnification") (emphasis added).

Pursuant to the express terms of the agreement, Wal-Mart's right to recover attorneys' fees from Public Pay Phone arises only where the underlying claim is within the scope of one (1) of the four (4) categories enumerated above.[5] Obviously, the Plaintiff's liability claims do not implicate the fourth category listed above, i.e., claims involving "any alleged patent, copyright, or trademark infringement or unauthorized use of trade secrets or other proprietary rights in connection with a Public Telephone provided under this agreement." Accordingly, Public Pay Phone's argument will focus on whether the proof at trial, coupled with the arguments raised in Wal-Mart's post-trial brief, establish by a preponderance of the credible evidence that the Plaintiff's underlying liability claims fall within any of the first three (3) categories listed above.

---

[5] Prior to trial, Public Pay Phone filed a Motion to Dismiss [Doc. 52] and Amended Motion to Dismiss [Doc. 62], which sought dismissal of Wal-Mart's contractual claims on the basis that the Plaintiff's underlying liability claims did not fall within the scope of the parties' indemnity agreement. As the Court is aware, it was subsequently ordered that final resolution of Wal-Mart's contractual claims, including its claim for attorneys' fees, "should properly wait until after the jury has had a chance to determine to what extent, if any, fault for Moore's injuries lies with Wal-Mart and/or PPC." See Order [Doc. 81], at 5. As the jury has now returned a verdict that does not establish any facts that would entitle Wal-Mart to prevail on its claim for attorney's fees, Public Pay Phone respectfully submits that this Court should enter judgment in its favor.

### A. Plaintiff's Claims Against Wal-Mart Did Not Arise Out Of "The Operation Of A Public Payphone"

In its post-trial brief, Wal-Mart fails to articulate how the Plaintiff's underlying liability claims fit within any of these classifications. Rather, Wal-Mart merely offers the conclusory statement "[t]he contract contained a defense and indemnity obligation in paragraph 5 which specifically addressed the scenario presented by Plaintiff's claims when a claim was filed against Wal Mart arising out of the operation of the subject payphone in its Indianola store." See *Wal-Mart's Brief*, at 4. The fallacy of this statement is that ***absolutely no evidence whatsoever*** was submitted at trial that the Plaintiff's injuries occurred while she, or anyone else, was using and/or operating the subject payphone.

At trial, the Plaintiff's deposition testimony was submitted to the jury, which included the following:

Q.    ... **Were you trying to use the phone at all**?

A.    **No**.

Q.    **Was anybody around you trying to use the phone**?

A.    **No**.

See *Plaintiff's Deposition Transcript (Exhibit "B" hereto)*, at 27 (emphasis added).

The Plaintiff's testimony could hardly be more unequivocal that the subject payphone was not in operation at the time she allegedly sustained her injury. It further must be observed that no evidence disputing or otherwise questioning the Plaintiff's testimony in this regard was offered at trial. Thus, in light of the Plaintiff's uncontested testimony, it is clear that the underlying claim for which attorneys' fees are sought did not arise out of "the operation of a Public Payphone provided under this Agreement," as alleged by Wal-Mart.

Wal-Mart's blanket assertion that "the scenario presented by Plaintiff's claims" involved "the operation of the subject payphone in its Indianola store" suggests that Wal-Mart interprets the phrase "operation of a Public Payphone" to be synonymous with the payphone's mere presence within its Indianola store. As set forth above, however, "the words of a contract are to be understood in their ordinary sense." *Muzzi*, 171 Cal. App. 4th at 465, 89 Cal. Rptr. 3d at 637. Public Pay Phone respectfully submits that the "ordinary sense" of the phrase "operation of a Public Payphone" connotes some active use of the phone, and not simply its existence. See AMERICAN HERITAGE DICTIONARY 1268 (3d ed. 1992) (defining "operation" as "[t]he act or process of operating or functioning.").

To the extent that Wal-Mart's interpretation of the phrase "operation of a Public Payphone" conflicts with Public Pay Phone's, or otherwise creates some ambiguity as to its meaning, such must be resolved in favor of Public Pay Phone. Under both California and Mississippi law, it is well-established that vague or ambiguous terms are always construed more strongly against the party drafting the agreement. *Victoria v. Superior Court*, 710 P.2d 833, 839 (Cal. 1985) ("It is a well-settled rule of law that ambiguities in a written contract are to be construed against the party who drafted it."); *Banks v. Banks*, 648 So.2d 1116, 1121 (Miss. 1994) ("There is also the universal rule of construction that when the terms of a contract are vague or ambiguous, they are always construed more strongly against the party preparing it.").[6] Accordingly, Public Pay Phone respectfully submits that the underlying claim did not arise out of "operation of a Public Payphone," such that Wal-Mart must demonstrate that its alleged right to

---

[6] This same rule of law has also been deemed applicable by this Court in its analysis of the parties' indemnity agreement. See Order [Doc. 81], at 3 ("It should be noted that it is a near-universal rule of contract interpretation that ambiguities in a contract should be resolved against the drafting party, and, as noted previously, an agent for Wal-Mart drafted the contract at issue herein.").

attorneys' fees is established by one of the remaining categories of claims addressed in the subject indemnification provision.

**B.** ***Plaintiff's Claims Against Wal-Mart Did Not Arise Out Of Any Actual Or Alleged Negligence Or Dishonesty On The Part Of Public Pay Phone***

The second category of claims covered by the subject agreement allows Wal-Mart to recover indemnity and/or attorneys' fees where the underlying claim arises out "any actual or alleged negligence or dishonesty of, or any actual or alleged act of commission or omission by [Public Pay Phone] or any of its employees, agents, or subcontractors in performance of this Agreement." See *Exhibit TPD-1 (Exhibit "A"* hereto), at ¶ 5 ("Indemnification"). As the Court is aware, the Plaintiff did not assert any claims against Public Pay Phone and/or its employees, agents and subcontractors, and instead sought to assign any and all liability for her alleged injuries to Wal-Mart.[7] As the Court is further aware, the jury was instructed that it was free to allocate to Public Pay Phone whatever percentage of liability it determined was supported by a preponderance of the credible evidence at trial, and returned a verdict that assigned no fault and/or liability to any party, including Public Pay Phone. Thus, it cannot be said that the underlying claim arose out of "any actual or alleged negligence or dishonesty of, or any actual or alleged act of commission or omission by" Public Pay Phone. Accordingly, for Wal-Mart to establish any contractual right to recover its attorneys' fees in this case, it must demonstrate that

---

[7] Specifically, in her Complaint, the Plaintiff alleged that Wal-Mart negligently:

    a.    Failed to maintain the pay phone in a reasonably safe condition;
    b.    Allowed the pay phone to be exposed when Wal-Mart knew or should have known that the casing posed an unreasonable risk of harm to its customers;
    c.    Failed to warn Ms. Moore of the danger posed by the damaged pay phone casing;
    d.    Failed to repair the pay phone; and
    e.    Failed to otherwise exercise due care.

*Plaintiff's Complaint (Exhibit "C"* hereto), at ¶ 7.

Plaintiff's claims fall within the third classification for which attorneys' fee are provided for under the subject agreement.

### C. Plaintiff's Claims Against Wal-Mart Did Not Arise Out Of Any Breach By Public Pay Phone Of Its Obligations Under The Subject Agreement

Unable to establish that the underlying liability claims arose out of either the operation of the subject payphone or any actual or alleged negligence on the part of Public Pay Phone, Wal-Mart must prove that the Plaintiff's claims arose out of a "breach by [Public Pay Phone] of its obligations hereunder." See *Trial Exhibit TPD-1* (*Exhibit "A"* hereto), at ¶ 5 ("Indemnification"). In its post-trial brief, Wal-Mart fails to raise any argument that attorneys' fees are warranted under this specific prong of the agreement. Instead, Wal-Mart argues that Public Pay Phone bears "the sole responsibility of installation, maintenance and repair of the payphone in the Indianola Wal-Mart that was involved with the claims brought by Plaintiff." See *Wal-Mart's Brief*, at 3-4.[8] Essentially, Wal-Mart is arguing that because the payphone casing was in disrepair at the time of the Plaintiff's alleged injuries, Public Pay Phone was in breach of its contractual duty to repair the phone, and should therefore be made to reimburse Wal-Mart for the attorneys' fees incurred in defending the Plaintiff's claims. This argument, however, not only ignores the express terms of the subject agreement, but further disregards the most basic notions of common sense.

The repair provision contained in the subject agreement provides, in relevant part, that Public Pay Phone would "maintain the payphone(s), enclosure(s) and associated wiring in proper working order and, ***when notified,*** will promptly repair such equipment, unless prevented from

---

[8] Wal-Mart further quotes a provision of the contract stating that "any damage caused by the placement, movement or removal of the Public Telephone shall be the sole responsibility of [Public Pay Phone]." See *Wal-Mart's Brief*, at 3. This language refers to any structural damage associated with the physical installation and removal of the phone, rather than bodily injury, and therefore bears little, if any, relevance to the issues before the Court.

doing so by events not within its control ... ." See *Trial Exhibit TPD-1* (*Exhibit "A"* hereto), at ¶

1(A)(ii) ("Engagement") (emphasis added). As set forth in the preceding sentence, Public Pay

Phone's duty to repair the subject payphone arose only upon notification of the need to perform

any such repairs. Put another way, notice from Wal-Mart to Public Pay Phone served as a

condition precedent to Public Pay Phone's repair obligations under the contract. See *Juarez v.*

*Arcadia Financial, Ltd.*, 152 Cal. App. 4th 889, 903, 61 Cal. Rptr. 3d 382, 390 (Cal. App. 2007)

(defining "condition precedent" as "[a]n act or event ... *that must exist or occur before a duty to*

*perform something promised arises*.") (quoting BLACK'S LAW DICTIONARY (8th ed. 2004))

(emphasis added); *Turnbough v. Steere Broad. Corp.,* 681 So.2d 1325, 1327 (Miss.1996)

(defining "condition precedent" as "*a condition which must be fulfilled before the duty to*

*perform an existing contract arises*.") (quoting *Mid-Continent Telephone Corp. v. Home*

*Telephone Co.,* 319 F. Supp. 1176 (N.D. Miss. 1970)) (emphasis added); see also *Corrigan*

*Dispatch Co. v. Casa Guzman,* 696 F.2d 359, 363 (5th Cir.1983) ("If a fact or event is a

condition precedent to a promisor's duty to render the performance promised, its absence or non-

occurrence is a 'defense' in an action brought against him for breach of his promise.") (quoting

3A A. CORBIN, CONTRACTS § 632 (1960)). Accordingly, it cannot be said that Public Pay Phone

breached its duty to repair the subject payphone and/or its casing unless is it first established that

Wal-Mart notified Public Pay Phone of the need to perform any such repairs.

The fact that the subject agreement would require Wal-Mart to notify Public Pay Phone

of the need to repair as a condition precedent to the duty to perform such repairs only makes

sense. As a practical matter, Wal-Mart, and not Public Pay Phone, exercised control over the

premises in which the subject payphone was housed. Moreover, as confirmed by the testimony

offered at trial, it was Wal-Mart's employees, rather than Public Pay Phone's contractors, who

were in the Indianola store and its customer service department on a daily basis. Similarly, it was Wal-Mart's personnel, and not Public Pay Phone's, that were in a position to ascertain whether there existed any condition which required that repairs to the payphone and its casing be performed. Indeed, the Fifth Circuit has expressly recognized the logic of these same points:

> ***The party who is in possession and control of the property is in the best position to know whether repairs are needed. The nonpossessing party cannot be expected to intuit the need for repairs; it is perfectly obvious that he must acquire knowledge of the defect before he can repair it.*** The possessing party not only will be the first to learn of the defect but will also be able to take temporary safety precautions until the repairs can be made. The nonpossessing party, on the other hand, would have to maintain a watchman on the premises in order to safeguard invitees from defects between the time of their discovery and the time when repairs could be made. This would be an erratic and economically wasteful solution to a basically simple problem.
>
> There is no question that the parties to a [contract] are free to make their own agreement, even a seemingly harsh one, within the bounds of law and public policy. ***However, the courts will not construe a contract to mean that the parties have agreed to act contrary to what common sense and the circumstances obviously demand, unless the contract is explicit and clear in that meaning. Since the appellant certainly did not have possession or control of the leased premises in this case, the sensible procedure for effecting repairs was for the appellee or its agent to notify the appellant of the need***.

*Stool v. J. C. Penney Co.*, 404 F.2d 562, 565-66 (5th Cir. 1968) (emphasis added).[9]

---

[9] The Fifth Circuit is hardly alone in recognizing the basic premise that, absent control and/or an agreement to the contrary, notice and/or knowledge of a defective condition on the premises is necessary before the duty to repair arises. See e.g., *Chambers v. Lindsey*, 171 Ala. 158, 55 So. 150, 152 (1911); *Bowling v. Carroll*, 122 Ark. 23, 182 S.W. 514, 515 (1916); *Sieber v. Blanc*, 76 Cal. 173, 18 P. 260, 261 (1888); *Rumberg v. Cutler*, 86 Conn. 8, 84 A. 107, 108 (1912); *Richards v. Dodge*, 150 So.2d 477, 484 (Fla. Ct. App.1963); *Valdes Hotel Co. v. Farrell*, 17 Ga. Ct. App. 93, 86 S.E. 333, 335 (1915); *Woodbury Co. v. William Tackaberry Co.*, 166 Iowa 642, 148 N.W. 639, 642 (1914); *Ensminger v. Great A. & P. Tea Co.*, 134 So.2d 686, 691 (La. Ct. App.1961)); *Fiorntino v. Mason*, 233 Mass. 451, 124 N.E. 283 (1919); *Thompson v. Clemens*, 96 Md. 196, 53 A. 919, 922, 60 L.R.A. 580 (1903); *Plate Glass Underwriters' Mut. Ins. Co. v. Ridgewood Realty Co.*, 219 Mo. Ct. App. 186, 269 S.W. 659, 661 (1925); *Brewington v. Loughran*, 183 N.C. 558, 112 S.E. 257, 28 A.L.R. 1543 (1922); *Lommori v. Milner Hotels, Inc.*, 63 N.M. 342, 319 P.2d 949, 954 (1957); *Thomas v. Kingsland*, 108 N.Y. 616, 14 N.E. 807, 808 (1888); *Asheim v. Fahey*, 170 Or. 330, 133 P.2d 246, 247, 145 A.L.R. 861 (1943); *Glassman v. Martin*, 196 Tenn. 595, 269 S.W.2d 908 (1954); PROSSER, LAW OF TORTS § 80, at 474-76 (1955).

In the current matter, there can hardly be any doubt that Wal-Mart failed to provide Public Pay Phone with notice of the damaged condition of the wooden payphone casing prior to the incident involving the Plaintiff. Indeed, Wal-Mart expressly admits that it did not inform Public Pay Phone of the damaged wooden payphone casing until after the alleged incident. In response to an Interrogatory requesting that it "identify any and all efforts taken by Wal-Mart to notify or otherwise advise Third-Party Defendants of any damage to the wooden casing housing the public pay phone involved in the subject incident," Wal-Mart responded as follows:

> **RESPONSE**: Third Party Defendant [sic] was contacted by Wal-Mart and its representative via telephone and written correspondence *after the subject incident.*

See *Exhibit TPD-6* (*Exhibit "D"* hereto), at 3 (Response to Interrogatory No. 6) (emphasis added).

The preceding Interrogatory response clearly establishes that Wal-Mart failed to provide Public Pay Phone with notice of the damaged payphone casing, and therefore failed to fulfill a necessary condition precedent under the contract. As discussed more thoroughly below, while Wal-Mart attempted to convince the jury at trial that Public Pay Phone independently acquired knowledge of the payphone casing's damaged condition, it failed to raise this allegation during written discovery. To be certain, Wal-Mart could have submitted a response stating that it had no duty to notify Public Pay Phone of the damage to wooden pay phone casing because Public Pay Phone had acquired such knowledge on its own. Instead, Wal-Mart submitted a sworn response that failed to make any allegation or reference to Public Pay Phone having acquired knowledge of the damage through one of its agents. See *Dockins v. Allred,* 849 So.2d 151, 155 (Miss. 2003) ("Because of judicial estoppel, a party cannot assume a position at one stage of a proceeding and then take a contrary stand later in the same litigation."); see also *Richardson v. Cornes,* 903 So.2d 51, 56 (Miss. 2005); *Scott v. Gammons,* 985 So.2d 872, 877 (Miss. Ct. App.

2008). Given its own sworn admission that it did not provide Public Pay Phone with notice of the damaged payphone casing until after the Plaintiff was allegedly injured, Wal-Mart cannot establish or otherwise satisfy its burden of proof on the issue of notice.[10] Accordingly, judgment in favor of Public Pay Phone is warranted based on Wal-Mart's failure to fulfill a condition precedent to the alleged right to recover attorneys' fees for its defense of the underlying claim.

At trial, Wal-Mart elicited testimony from one of its employees, Sarah Walker, that someone from Public Pay Phone had collected money from the phone in the week prior to the incident where the Plaintiff was allegedly injured, but failed to repair the damaged payphone casing.[11] Further, in its post-trial brief, Wal-Mart states that Ms. Walker "testified that she specifically recalled the agent for Public Pay Phone came to collect the money from this phone while it was in a damaged condition but did not make the necessary repairs or place warnings

---

[10] In its post-trial brief, Wal-Mart argues that "Third-Party Defendants have relied on an alleged condition precedent of sorts in the Contract which states that "indemnification shall not apply in the event the injury or damage arises out of or is caused by the negligence or willful misconduct of an indemnified party." See *Wal-Mart's Brief*, at 7. In raising this argument, Wal-Mart obviously misconstrues the relevant condition precedent at issue, which is whether Wal-Mart provided Public Pay Phone with notice of the need to repair the subject payphone, and not whether Wal-Mart was negligent. Wal-Mart's confusion on this issue can only be described as puzzling, given that this Court previously acknowledged that "section 1 of the contract requires PPC to repair its phone 'when notified' that such repairs are needed, and it is arguable that Wal-Mart failed to comply with its obligations (*or at least with a condition precedent*) in this regard." See Order [Doc. 81], at 3 (emphasis added).

[11] Wal-Mart's reliance of Ms. Walker's testimony is substantially undermined by the fact that Wal-Mart, itself, apparently gave little credence to her recollection of the events surrounding the subject incident. As the Court is aware, Ms. Walker testified that the subject payphone had been in a damaged condition for at least a week prior to the incident that allegedly injured the Plaintiff. In response to an Interrogatory requesting that it "identify the date upon which any Wal-Mart employee became aware of any damage whatsoever to the wooden casing housing the public pay phone involved in the subject incident," Wal-Mart responded that it "was made aware of the broken payphone casing *after the subject incident*." See *Exhibit TPD-6 (Exhibit "D"* hereto), at 3 (Response to Interrogatory No. 5) (emphasis added). If Wal-Mart was content to disregard Ms. Walker's recollection at the time it responded, under oath, to the previous Interrogatory, it should not be allowed to now point to Ms. Walker's testimony as being a reliable indicator of how and when events relating to the underlying incident transpired.

itself." See *Wal-Mart's Brief*, at 5-6. Ostensibly, Wal-Mart submits Ms. Walker's testimony for the purpose of establishing that Public Pay Phone had notice of the damaged condition, as to satisfy the condition precedent to its right to attorneys' fees.

Public Pay Phone respectfully submits that the Wal-Mart's sworn Interrogatory response stating that it did not notify Public Pay Phone of the damaged condition of the payphone's wooden casing is dispositive of the issue of whether Wal-Mart fulfilled its notice obligations under the contract. Even considering the testimony of Ms. Walker, however, such is insufficient to satisfy Wal-Mart's burden of proving that Public Pay Phone actually had notice of the damaged wooden payphone casing. As the Court no doubt recalls, Ms. Walker was unable to recall a number of facts and other circumstances regarding the incident involving the Plaintiff at trial, which casts serious doubts on the veracity of her testimony as a whole. Indeed, her recollection of an unidentified man coming to collect money from the phone was one of only a few matters that Ms. Walker did not admit to having difficulty remembering some three (3) years after the fact.

It must further be observed that Ms. Walker's testimony that someone from Public Pay Phone collected the money without fixing the phone casing was thoroughly refuted by the testimony of Ed Cutshall, the independent contractor retained by Public Pay Phone to collect money from its phones in North Mississippi, including the phones located at the Indianola Wal-Mart. Specifically, Mr. Cutshall testified that he was the only person that could have collected money from the subject payphone, as he was the only person who had a key to the phone's coin box. Mr. Cutshall further testified that he did not visit the Indianola Wal-Mart during the month of April, 2006, until after the Plaintiff's alleged injuries had already occurred. Moreover, Mr. Cutshall's timeline was documented by his credit card statements, which showed that he was not

present in Indianola between the dates of March 24, 2006, and April 26, 2006. See *Exhibit TPD-10* (*Exhibit "E"* hereto).

As the Court is aware, both Wal-Mart and Public Pay Phone have agreed to allow this Court to resolve any factual issues necessary to adjudicate Wal-Mart's contractual claim for attorneys' fees and expenses. Again, given that Wal-Mart has submitted a sworn discovery response acknowledging that it did not provide notice to Public Pay Phone of the damage to the wooden payphone casing until after the incident alleged by the Plaintiff, Public Pay Phone respectfully submits that there can be no disputed issue of fact on the question of notice. To the extent that Ms. Walker's testimony creates a question of fact to be resolved by this Court, however, Public Pay Phone submits that Ms. Walker's testimony is insufficient to satisfy Wal-Mart's burden of proof on this issue.

By Ms. Walker's own admission, her memory of the circumstances surrounding the Plaintiff's injury is uncertain, at best. In contrast, Mr. Cutshall's testimony was confirmed by supporting documentation. More than this, however, Mr. Cutshall's version of the events is supported by the credibility and character he brought to the witness stand. To accept Ms. Walker's testimony, one must accept not only that Mr. Cutshall testified untruthfully, but also that a man with over thirty (30) years of experience in the telephone business would have willingly left the subject payphone in a damaged condition, despite the fact that it would have taken only a few moments to remove those portions of the wooden casing that had become loose. Public Pay Phone respectfully submits that there can be no question as to who the more credible witness is in this regard, and that Mr. Cutshall's testimony, rather than Ms. Walker's, should be accepted as fact. Thus, because Wal-Mart did not provide notice to Public Pay Phone of the need to repair the subject payphone, it cannot be said that Public Pay Phone breached its repair

15

obligations under the subject agreement. Accordingly, Wal-Mart cannot establish that the Plaintiff's underlying claims arose out of any breach of the subject agreement by Public Pay Phone, and further cannot establish that it has any contractual right to recover its attorneys' fees and expenses in this case.

### III. WAL-MART'S ARGUMENT THAT THE ABSENCE OF NEGLIGENCE EQUATES WITH A CONTRACTUAL RIGHT TO ATTORNEYS' FEES IS FUNDAMENTALLY FLAWED

Throughout its post-trial brief, Wal-Mart references its "general policy ... in regard to outside vendors." See *Wal-Mart's Brief*, at 3. Specifically, Wal-Mart argues that it "relies upon the outside vendor to properly install, maintain and repair their products or service," and that it "routinely requests its outside vendors to provide a legal defense and indemnity to Wal-Mart if is sued because of the outside vendor's product or device." *Id.* at 3, 4. This argument, for which Wal-Mart fails to provide any evidentiary support, is simply irrelevant in regards to the current case.[12] Regardless of any policy Wal-Mart may or may not have with its outside vendors, the only thing that determines whether Public Pay Phone has any obligation to reimburse Wal-Mart for its attorneys' fees in *this* case is the specific contractual agreement between *these* two (2) parties. See *Oakland-Alameda County Coliseum, Inc. v. Oakland Raiders, Ltd.*, 197 Cal. App. 3d

---

[12] Indeed, this Court has already rejected Wal-Mart's claim that its alleged policy with respect to outside vendors affords it any relief in this case:

> [Wal-Mart's] own interpretation would provide it with seemingly unfettered discretion to decide when PPC is required to pay its attorneys' fee. This would be a highly dubious result, as a matter of law and public policy. ***It does not require a great deal of imagination to predict that Wal-Mart would likely seek to exercise any such discretion broadly in favor or requiring its vendors to provide it with defenses to any lawsuits as it has done in this case***. It is the court's inclination to conclude that Wal-Mart should not be held to have such broad discretion to favor its own financial interests based upon the provisions of a contract which is arguably ambiguous and susceptible to differing interpretations.

See Order [Doc. 81], at 5 (emphasis added).

16

1049, 243 Cal. Rptr. 300 (Cal. App. 1 Dist. 1988) (holding that "unexpressed intent cannot be used to interpret a contract."); *Blumenfeld v. R.H. Macy & Co.*, 92 Cal. App. 3d 38, 46, 154 Cal. Rptr. 652 (Cal. App. 1979) ("A party is bound, even if he misunderstood the terms of a contract and actually had a different, undisclosed intention."); *Turner v. Terry*, 799 So.2d 25, 32 (Miss. 2001) ("We are concerned with what the contracting parties have said to each other, not some secret thought of one not communicated to the other.") (quoting *Osborne v. Bullins*, 549 So.2d 1337, 1339 (Miss. 1989)).

As set forth previously, Wal-Mart's post-trial brief fails to articulate or otherwise explain which of the categories for which indemnification and attorneys' fees are provided by the subject agreement applies in this case. Ignoring the express language of its agreement with Public Pay Phone, Wal-Mart instead points to its "general policy" of requiring vendors to furnish it with a defense and indemnity. This alleged policy, however, was not expressed in Wal-Mart's contract with Public Pay Phone, and cannot provide and basis for an award of attorneys' fees in this case.

In relying on its alleged "general policy," Wal-Mart treats the subject indemnification agreement as being virtually absolute in scope, limited only where its willful conduct is found to have caused the underlying injury. Specifically, Wal-Mart argues as follows:

> Public Payphone and Mr Schmidt [sic] were afforded the same opportunity to submit evidence during the trial and repeatedly alleged that Wal-Mart was negligent because its associates had knowledge of damage to the phone enclosure prior to Plaintiff's incident. Upon careful deliberation of such evidence and the defenses asserted by Wal-Mart, the jury found that Wal-Mart was not negligent in this case. Therefore, pursuant to the Court's ruling in the Motion for Summary Judgment and contract, Wal-Mart is an indemnified party entitled to indemnification from PPC and/or Mr. Schmidt. Since it has been established by the jury that Wal-Mart is not negligent, and there is no suggestion of [sic] evidence that Wal Mart willfully caused the incident with Plaintiff, Defendant is entitled to full reimbursement of attorneys fees pursuant to the Contract.

See *Wal-Mart's Brief*, at 7.

The fallacy of the preceding argument is twofold. First, the absence of negligence does not, in and of itself, afford Wal-Mart a right to attorneys' fees.[13] While Public Pay Phone certainly agrees that a finding that Wal-Mart was negligent would have been fatal to any claim for indemnity and/or attorneys' fees under the contract, Wal-Mart assumes that its right to indemnity and attorneys' fees has already been established. By ignoring the requirement that it first-establish a right to attorneys' fees by showing that the Plaintiff's claims fall within one the contract's four (4) categories of covered claims, Wal-Mart is guilty of placing the proverbial cart before the horse. Without an underlying right to indemnity and attorneys' fees, Wal-Mart cannot claim to have been an "Indemnified Party" under the contract. Put another way, while a finding of negligence certainly would have negated any existing right to indemnity, the contract could not take away what it never granted in the first place.[14]

---

[13] Wal-Mart's argument employs the word "negligent" interchangeably when referring to Public Pay Phone's characterization of Wal-Mart's conduct and the verdict reached by the jury at trial. The subtle, yet important, distinction ignored by Wal-Mart is that Public Pay Phone did not make any attempt to prove or otherwise bolster the claim that the Plaintiff actually sustained any physical injury as a result of Wal-Mart's conduct. While Public Pay Phone certainly sought to establish that Wal-Mart breached its standard of care in allowing the subject payphone to remain in a damaged condition for over a week, and that such was the cause of any *potential* injury, the jury was tasked with determining whether there was, in fact, any *actual* injury. While Public Pay Phone is reluctant to speculate as to which elements the Plaintiff did or did not prove, the jury's inquiries to the Court during its deliberations suggest that it was the element of damages, and not duty, breach and/or causation, that produced the verdict in this case. Regardless, the jury's verdict on the issue of tort liability is not determinative of the question of whether Wal-Mart enjoys a contractual right to attorneys' fees.

[14] It should be observed that in its Order denying Wal-Mart's Motion to Reconsider its previous decision denying Wal-Mart's request for summary judgment, this Court expressly stated that "[a] reasonable vendor reading the two sentences which Wal-Mart itself drafted might very reasonable conclude that Wal-Mart loses 'indemnified party' status when it acts negligently." See Order [Doc. 93], at 2. Public Pay Phone respectfully submits that, because the Plaintiff's underlying liability claims do not fall within the scope of the subject indemnity provision, Wal-Mart never acquired the status of "indemnified party" with respect to these claims, such that it could not "lose" indemnified status as a result of the jury's verdict.

The second fundamental flaw of Wal-Mart's argument lies in its statement that its right to attorneys' fees is justified because "there is no suggestion of [sic] evidence that Wal Mart willfully caused the incident with Plaintiff." At trial, Wal-Mart went to great lengths to highlight the fact that there was no evidence that its employees actually damaged the wooden payphone casing. Public Pay Phone respectfully submits, however, that this presentation was and remains irrelevant. The lack of any evidence that Wal-Mart actively damaged the subject payphone at trial can be simply explained -- no one was alleging such was the case. Likewise, the absence of any "suggestion of [sic] evidence that Wal Mart willfully caused the incident" in this brief is because such would only be superfluous. Because Wal-Mart has not established the threshold issue of its entitlement to attorneys' fees under the contract, there is no need for Public Pay Phone to show that Wal-Mart was guilty any willful or simple negligence.[15]

In light of Wal-Mart's efforts to substitute the seemingly unlimited indemnification obligations imposed by its alleged "outside vendor" policy in place the express terms actually provided in its agreement with Public Pay Phone, this Court's previous analysis of the subject agreement warrants revisiting. Specifically, in denying Wal-Mart's request to reconsider the denial of its Motion for Summary Judgment, this Court offered the following relevant discussion:

> Wal-Mart's interpretation of the contract would grant it unfettered discretion to demand that PPC pay its attorneys' fees, regardless of the circumstances of a particular case. *In this court's experience, clauses requiring one party to pay the attorneys' fees of another generally involve some sort of objective standard, usually based on the allegations of the plaintiff's complaint, which the court can apply to determine whether a particular lawsuit falls within the scope of that clause. Wal-Mart envisions the defense clause in this case as being essentially a "because I said so" clause whereby it*

---

[15] Wal-Mart's statement that "there is no suggestion of [sic] evidence that Wal Mart willfully caused the incident with Plaintiff," is further flawed, in that such suggests that Public Pay Phone, rather than Wal-Mart, carries the burden of proof in this matter. See *Peter Culley & Associates*, 10 Cal. App. 4th at 1498, 13 Cal. Rptr. 2d at 633 ("[I]n a contractual indemnity action, the indemnitee must prove that liability is covered by the contract, that liability existed, and the extent thereof.").

> ***has the "sole discretion," without the slightest possibility of contravention by this Court, to decide whether PPC should pay its attorneys' fees.***
>
> By Wal-Mart's logic, it (along with its employees, contractors, and many others) would have the contractual right to demand that PPC defend it in a slip-and-fall action which occurred a great distance from the phone in question and had nothing whatsoever to do with the phone. While this case clearly does not present such an absurd fact pattern, Wal-Mart's interpretation of the contract would clearly support such an absurd result, and this fact militates against interpreting the contract in the manner suggested by Wal-Mart. ***It may be the case that Wal-Mart could validly draft a contract which granted it "sole discretion," irrespective of the circumstances, to decide when a third-party is obligated to pay its attorneys' fees. If Wal-Mart wished to have this court enforce such a one-sided and unfair contract, it should have drafted the contract using language that left the reader with no doubt as to its meaning. Without question, the contract in this case did not do so, and this court is unwilling to abrogate its customary role of interpreting contracts in a fair and reasonable manner.***

See Order [Doc. 93], at 2-3 (emphasis added).

Despite this Court's admonishments, Wal-Mart's present argument does little to depart from its previous "because I said so" view of the subject indemnity agreement. While Wal-Mart wisely avoids references to the notion that it enjoys "sole discretion" in terms of deciding when attorneys' fees are owed, it continues to urge an interpretation of the agreement that goes far beyond what the contract, itself, provides. While Wal-Mart would have this Court believe that it enjoys an absolute right to attorneys' fees that is negated only be a finding of negligence, the fact remains that the agreement, itself, only provides attorneys' fees in four (4) limited circumstances. As this Court has acknowledged, if Wal-Mart wished to have broad, unfettered rights to indemnity and attorneys' fees, it should have worded the agreement to reflect that such was the case. Instead, Wal-Mart chose to draft an agreement that provides it with indemnity and attorneys' fees only where the underlying claim arises from a limited set of circumstances.

Unable to establish that the Plaintiff's liability claims arose out of one (1) of the four (4) categories of covered claims provided by its agreement with Public Pay Phone, Wal-Mart simply

ignores these criteria, and treats the indemnity agreement as absolute in scope. The fact that the jury returned a verdict in favor of Wal-Mart in no way changes the nature of the underlying suit, however, and therefore does nothing to bolster Wal-Mart's claim for attorneys' fees. Accordingly, because the jury's verdict does not vest Wal-Mart with any legitimate right to recover its attorneys' fees under the contract, Public Pay Phone respectfully requests that Wal-Mart's claim for attorneys' fees be dismissed, and judgment entered in its favor.

## IV.    REASONABLENESS OF ATTORNEY'S FEES

Under Mississippi law, "[t]he standard of review regarding attorneys' fees is the abuse of discretion standard, and such awards must be supported by credible evidence." *Miss. Power & Light Co. v. Cook,* 832 So.2d 474, 486 (Miss.2002) (citing *Regency Nissan, Inc. v. Jenkins,* 678 So.2d 95, 103 (Miss.1995)); see also *Ford Motor Co. v. Tennin*, 960 So.2d 379 (Miss. 2007) ("Any award of reasonable attorney's fees must be supported by credible evidence."). Further, "any testimony by attorneys with respect to [the reasonableness of attorney's fees] is purely advisory and not binding on the trial court." *Mauck v. Columbus Hotel Co.,* 741 So.2d 259, 269 (Miss.1999).

In support of its claims for attorneys' fees, Wal-Mart argues that "the fees and expenses incurred in this case were reasonable as shown by the detailed billing statements submitted by defense counsel showing a reasonable legal rate charged per hour as well as reasonable amount of time expended for the various legal work performed under the lodestar calculation method." See *Wal-Mart's Brief,* at 8. Despite the fact that the only evidence submitted regarding the reasonableness of the attorney's fees in this case are the invoices documenting the fees, themselves, Wal-Mart further argues that "there is substantial evidence of the reasonableness of

21

the fees requested." *Id.* at 8-9.[16] As set forth above, however, the assertions of counsel regarding the reasonableness of the fees incurred are not binding on this Court. Thus, even in the event this Court determines that Wal-Mart is contractually entitled to recover its attorneys' fees in this case, it is free to reduce that total to any lesser amount it deems reasonable based on the materials submitted.

## V.  CONCLUSION

Wal-Mart has failed to prove by a preponderance of the credible evidence that it has any right to attorneys' fees and/or expenses under its agreement with Public Pay Phone. By its own express terms, the contract only provides rights to indemnification and attorneys' fees in four (4) specific instances. Neither the evidence submitted at trial, nor the arguments raised by Wal-Mart in its post-trial brief, have established that the Plaintiff's underlying claims fall within any of these categories. Moreover, to the extent Wal-Mart might otherwise be entitled to indemnity and/or attorneys' fees merely because the phone was in need of repair at the time of the Plaintiff's alleged injury, Wal-Mart did not provide notice to Public Pay Phone that the payphone was in need of repair, such that it failed to fulfill its own contractual obligations and is therefore precluded from obtaining the relief it now seeks. While Wal-Mart attempts to convince this Court that its right to attorneys' fees is virtually unlimited, there simply is no support for this argument under the express terms of the contract.

---

[16] In its discussion of attorneys' fees, Wal-Mart again argues "the actually [sic] amount of legal fees incurred for this case demonstrates the reasons why retailers such as Wal-Mart routinely require outside vendors to defend and indemnify them in the event the retailer is sued because of a claim involving the outside vendor's product or device." See *Wal-Mart's Brief*, at 8. As discussed previously, any argument or reference to the policies of retailers in general is simply irrelevant in this case. Rather, it is the express language on the contract at issue in this case, rather than vague, conclusory retail policy arguments, that solely governs whether and to what extent, if any, that Wal-Mart is entitled to recover attorneys' fees in this case from Public Pay Phone.

Accordingly, for the reasons set forth herein, and based on the evidence submitted at trial, Third-Party Defendants, Public Pay Phone Company and Robert P. Schmidt, respectfully request that this Court enter judgment in favor of Third-Party Defendants, Public Pay Phone Company and Robert P. Schmidt, on Third-Party Plaintiff Wal-Mart Stores, Inc.'s claims for attorney's fees and expenses, thereby dismissing said claims with prejudice, and further award Third-Party Defendants, Public Pay Phone Company and Robert P. Schmidt, any and all other relief to which they are entitled under the law.

Respectfully submitted, this the 14th day of May, 2009.

PUBLIC PAY PHONE COMPANY AND
ROBERT P. SCHMIDT

By: */s/ Leo J. Carmody, Jr.*
Stuart Robinson, Jr. (MSB #5624)
Richard T. Conrad III (MSB #10648)
Leo J. Carmody, Jr. (MSB #100738)

OF COUNSEL:

ROBINSON, BIGGS, INGRAM,
    SOLOP & FARRIS, PLLC
130-A Courthouse Square
Post Office Box 2477
Oxford, MS 38655

Ph:     (662) 236-1500
Fax:    (662) 236-4968
Email: srobinson@rbisf.com
        rconrad@rbisf.com
        lacrmody@rbisf.com

Edward J. Currie, Esq.
CURRIE JOHNSON GRIFFIN
    GAINES & MYERS, P.A.
1044 River Oaks Drive
Jackson, MS 39232

Ph:     (601) 969-1010
Fax:    (601) 969-5120
Email: ecurrie@curriejohnson.com

23

## CERTIFICATE OF SERVICE

I, Leo J. Carmody, Jr., hereby certify that on the 14th day of May, 2009, I electronically

filed the foregoing with the Clerk of the Court using the ECF system, which sent notification of

such filing to the following:

> Arnold Datron Lee
> alee@lee-hughes.com
>
> L. Douglas Wade, Jr.
> R. Brittain Virden
> bvirden@campbelldelongllp.com
> dwade@campbelldelongllp.com

*/s/ Leo J. Carmody, Jr.*
Leo J. Carmody, Jr.
