**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

| | |
|---|---|
| **WILLIE MAE MOORE** | **PLAINTIFF** |
| **VS.** | **CAUSE NO. 4:07CV5-M-B** |
| **WAL-MART STORES, INC.** <br> **AND JOHN DOES 1-5** | **DEFENDANTS** |
| **AND** | |
| **WAL-MART STORES, INC.** | **DEFENDANT/THIRD-PARTY PLAINTIFF** |
| **V.** | |
| **PUBLIC PAY PHONE COMPANY,** <br> **ROBERT P. SCHMIDT AND** <br> **JOHN DOES A-B** | **THIRD-PARTY DEFENDANTS** |

**POST TRIAL BRIEF IN SUPPORT OF THIRD-PARTY BREACH OF
CONTRACT CLAIMS FOR ATTORNEY'S FEES AND EXPENSES**

Defendant/Third Party Plaintiff Wal Mart Store, Inc. hereby submits its post trial brief in support of the last remaining claims in this action, namely Wal-Mart Store, Inc.'s breach of contract and common law indemnity claims against Third Party Defendant Robert Schmidt/Public Payphone Company, which is submitted in specific response to the remand issue as noted by the Fifth Circuit Court of Appeals. Wal-Mart submits the exhibits and additional testimony submitted at the recently conducted bench trial on April 12, 2012, along with the prior evidence in this case, and, most important, the jury's verdict in favor of Defendant Wal Mart, confirms Plaintiff Moore's original claim did not arise out of any negligence or intentional act of Wal Mart. Thus, Third Party Defendant is obligated under the terms of the contract and Mississippi law to reimburse the full attorney's fees and legal expenses Wal-Mart incurred to defend the claims of Plaintiff Moore. The vague reasons given by Schmidt for his failure to reimburse Wal-Mart rely on an unreasonable interpretation of the contract language and an unproven condition precedent. However, Schmidt's contract interpretation is a linguistic stretch of the clear and unambiguous terms of

the contract. Also, Schmidt failed to satisfy his burden of proof by a preponderance of the evidence that somehow the condition precedent relied upon was triggered under the facts of this case. Finally, even if Schmidt somehow proved his unreasonable position, the plain and unambiguous terms of the contract require Schmidt/Public Payphone to fully reimburse Wal Mart all attorney fees and legal expenses incurred due to the breach of the indemnity provision under paragraph five (5).

### A.     Court of Appeals Inquiry

After this Court ordered Schmidt to reimburse the attorney's fees and expenses Defendant Wal-Mart incurred by its October 15, 2009 Order, Schmidt filed an appeal to the Fifth Circuit. The Fifth Circuit issued its Order and remand on July 27, 2011, which did not take issue with the findings on the underlying claims for reimbursement, but rather requested:

> On remand, the district court is authorized to determine what, if any, stipulation was made and make a finding on that issue. If the court determines that the parties agree then it could decide any unresolved factual and legal issues regarding indemnity, the court may conduct whatever additional hearings it finds necessary to resolve any issues regarding Wal-Mart's negligence and render a judgment on Wal-Mart's indemnity claim.

In order to address these limited issues, the parties first agreed to a signed Waiver to confirm their agreement that the final unresolved factual and legal issues regarding indemnity shall be finally resolved by the District Court via a bench trial. This Agreed Order Waiving Jury Trial is dated January 18, 2012.

### B.     The District Court's Order

This Court's original Order thoroughly analyzed the claims of Wal-Mart for reimbursement of attorneys fees/expenses via its breach of contract and indemnity claims along with the defenses asserted by Schmidt. After reviewing the extensive history of this action and with full consideration of Schmidt's stated defenses this Court held:

> In light of the jury's verdict, Public Pay Phone now seeks to argue that the indemnification provision does not apply at all in this case, since the facts here do not implicate its terms. The Court does not agree. Section 5 of the contract requires Public Pay Phone to indemnify and defend Wal-Mart for any claims "relating to liability for bodily injury or

2

> property damage. . .arising from, or alleged to have arisen from or relating to (a) the operation of a public telephone provided for under this agreement."
>
> This language is sufficiently broad to cover the claims in this case which involves a wooden casing surrounding a pay phone falling on Plaintiff's foot. Public Pay Phone argues that this provision does not apply since there is no evidence that " Plaintiff's injury occurred while she, or anyone else, was using and/or operating the subject pay phone," but is apparent that this argument is something of a stretch. Clearly, part of the proper "operation" of a pay phone is that it will retain its structural integrity, even while not being used, so as not to collapse and injury persons standing nearby. It is quite doubtful that Wal-Mart would have agreed to allow the phone to be installed in its store if it had been assured that while the phone would not electrocute or otherwise harm someone operating it, it was prone to collapse and injure shoppers or employees nearby. The Court therefore concludes that the indemnification provision applies in this case and Wal-Mart is entitled to recover its attorneys' fees and expenses from Public Pay Phone.

(Order October 15, 2009).

Ironically, Schmidt and his current legal counsel are making the same arguments considered as a stretch in the initial ruling on this case and steadfastly refuse to recognize the unreasonableness in their defenses. The unreasonable conduct from Schmidt has resulted in unnecessary litigation, legal expense and waste of judicial resources throughout this action. The Court pointed out to Schmidt over two years ago "the jury returned a defense verdict in this case, and the Court assumed that Public Pay Phone would simply agree to pay Wal-Mart's attorneys' fees since Wal-Mart had not been found to be negligent." *Id.* While the undersigned counsel agrees with this finding, the obstinate conduct of Schmidt/Public Pay Phone has nevertheless forced Defendant Wal-Mart to pursue its claims via this litigation and it is apparent the only rationale Schmidt will accept is an Order from this Court finally adjudicating the breach of contract/indemnity claims.

Pursuant to the remand inquiry noted by the Fifth Circuit the parties conducted a bench trial on April 12, 2012 where the parties offered additional testimony and exhibits to address the second issue for

3

the Court of Appeals.[1] Wal Mart submits this additional testimony and exhibits, coupled with the evidence from the first trial, the Court's prior Order, and the jury's verdict, confirms there is no credible evidence that Plaintiff's Moore's claim arose out of any negligence or intentional act of Wal Mart and therefore, this Court can specifically respond to the Fifth Circuit's inquiry with supplemental findings so that this case can finally be concluded.

**C.     Form Verdict Already Contemplated Alleged Negligence of Wal-Mart**

Prior to the bench trial in April, this Court correctly noted the jury was already allowed the express opportunity to allocate a finding of negligence to Wal-Mart along with a possible finding of negligence on all original parties with a Form of Verdict which stated:

1.      If you find for the Plaintiff, then the form of your verdict will be:
We, the jury, find for the Plaintiff and set the amount of compensatory damages at $_____.
OR
2.      If you find for the Defendant, the form of your verdict will be:
We, the jury, find for the Defendant.
OR
(3)     If you find for the Plaintiff and also find that Plaintiff was contributorily negligent, the form of your verdict will be:
We, the jury, find for the Plaintiff and set the amount of compensatory damages at $_____. We also find that Plaintiff was contributorily negligent and set the percentage of her negligence at_____% percent.
(4)     If you find that there was some other participant in the event which caused the Plaintiff's damages then you may set the percentage of fault for the other participants in the incident as follows:
Wal-Mart Stores, Inc. _____% percent.
Public Pay Phone Company/Robert Schmidt _____% percent.

(FORM VERDICT)

---

[1] Even though both parties presented additional testimony and exhibits on April 12, 2012 and then rested, Schmidt/Public Payphone attached an "Appendix" to his post trial brief with additional information which he did not seek to admit as an exhibit during the bench trial. Counsel for Defendant Wal Mart was never contracted to agree to such additional information/appendix as an actual exhibit for the Court's consideration. Furthermore, part of the Appendix contained duplicate information already admitted as exhibits at the bench trial and it is unknown why Schmidt attached the Appendix.

The court of Appeals did not address whether this Form of the Verdict was sufficient in and of itself to confirm the jury's verdict in favor of Defendant obviously was a finding that the subject claim of Plaintiff Moore did not arise out of any negligence or intentional action of Wal Mart.

**D.     Testimony of Sarah Walker**

In addition to the previous testimony of Sarah Walker, the parties submitted her deposition testimony for the Court's additional consideration due to the inquiries from the Fifth Circuit.  Ms. Walker's deposition confirmed she did not have personal knowledge how the casing on the pay phone came off of the wall but she did confirm she had no information whatsoever that anyone from Wal-Mart caused the pay phone to be damaged or be in that condition.  (Ex. WM 11 at 31).  Ms. Walker further testified that she was aware some part of the wooden casing was leaning against the wall before the incident with Plaintiff Moore but was unsure of the exact date she became aware of that condition.  *Id*. at 34-35.  Significantly, Ms. Walker testified she specifically recalls an employee of Public Pay Phone coming to remove the money from this pay phone located in the Customer Service Department *after* the wood casing was apparently damaged but *before* Plaintiff's Moore's incident.  *Id*. at 37.  Ms. Walker specifically recalls the employee of Public Pay Phone "fussing" at her to remove shopping carts/buggies near the pay phone and Ms. Walker recalls mumbling back that the Public Pay Phone employee should fix the casing on the pay phone while he was taking the money.  *Id*. at 37.  Furthermore, the deposition of Ms Walker casts doubt on the author of her written statement which turns out was hand written by Public Pay Phone's employee, Ed Cutshall, in his own handwriting. Ms. Walker does not specifically recall many of the statements allegedly attributed to her being made therein.  (Ex WM-11).

**E.     The Unambiguous Written Agreement Among the Parties**

Paragraph 17(b) of the Telephone Placement Agreement (Ex. WM-1) provides that any dispute among the parties will be governed by California law.  California courts have held the law of indemnity

5

is "the obligation resting on one party to make good the loss or damage another has incurred." *Heppler v. J.M. Peters Company, Inc.*, 73 Cal.App. 4th 1265, 1275 (Cal. 1999). "An express indemnity obligation is contractual in nature, permitting great freedom of action to the parties in the establishment of the indemnity arrangements while at the same time subjecting the resulting contractual language to established rules of construction." *Id.* at 1276. In addressing an express indemnity and defense clause in a contract similar to the request herein the Supreme Court of California stated:

> The question whether an indemnity agreement covers a given case turns primarily on contractual interpretation, and it is the intent of the parties as expressed in the agreement that should control. **When the parties knowingly bargain for the protection at issue, the protection should be afforded.**

*Rossmoor Sanitation, Inc. v. Pylon, Inc.*, 532 P.2d 97, 13 Cal.3d 622, 633 (Cal. 1975) (emphasis added)

**F.** **The Defense and Indemnity Obligation**

The contract contained an express defense and indemnity obligation in paragraph 5 which specifically addressed the scenario presented by Plaintiff Moore's claims when a claim was filed against Wal Mart arising out of the operation of the subject payphone in its Indianola store that was installed by Schmidt. In order to provide some measure of protection against expensive claims of the type brought by Plaintiff, (even though Plaintiff's alleged injuries may be considered slight) Wal Mart routinely requests its outside vendors to provide for a legal defense and indemnify Wal Mart if it is sued because of the outside vendor's product or device. This common practice among retailers and outside vendors is akin to the statutory protection provided to retailers when the retailer is sued in a products liability action alleging a defective product and the retailer is sued merely because it sold the product in the steam of commerce. MISS. CODE ANN § 11-1-63 (Supp. 2002).

The specific defense and indemnity clause in paragraph five (5) states:

6

> Provider [Public Pay Phone Company and Robert Schmidt] agrees to indemnify, defend and save Company [Wal-Mart Stores, Inc.] and their respective directors, officers, employees, subsidiaries, affiliates, landlords, agents and contractors (collectively, the "Indemnified Parties") harmless against each and every claim, demand, cause of action, loss, damage, injury, or lawsuit (including all associated attorneys' fees)(collectively, a "Claim"), relating to liability for bodily injury or property damage arising from, or alleged to have arisen from or related to (a) the operation of a Public Telephone provided under this Agreement . . . (c) any breach by Provider [Public Pay Phone and Robert Schmidt] of its obligations hereunder . . . However, this indemnification shall not apply in the event the injury or damage arises out of or is caused by the negligence or willful conduct of any indemnified party. An Indemnified Party may retain counsel and defend such Claim at Provider's [Public Pay Phone and Robert Schmidt's] expense if the indemnified party [Wal-Mart], in its sole discretion, believes that [Public Pay Phone and Robert Schmidt] will or has failed to complied with any of the terms or conditions of this Section 5.

(Ex. WM-1).

Despite this clear and unambiguous language, Schmidt steadfastly refused over the course of several years to honor this promise. Indeed, only two days after Plaintiff's incident, Wal-Mart placed Schmidt on written notice of the request for a full legal defense and indemnity. (Ex WM- 5). Schmidt never responded to that request. After Plaintiff Moore instigated her lawsuit against Wal-Mart several months later the undersigned legal counsel selected by Wal-Mart provided a second written demand for defense and indemnification to Schmidt pursuant to the terms of the Telephone Placement Agreement. (Ex. WM-6). Schmidt's first legal counsel responded with a letter dated July 19, 2007, but did not agree to reimburse for the legal defense costs of Wal Mart to Plaintiff's Moore's claims and then set about a long and expensive fight against Wal Mart's Third Complaint, which ultimately was found improper. (Ex. WM -9).

**G.    Schmidt's Reasons for Not Defending Wal Mart**

Schmidt's reason for not providing Wal Mart with a legal defense or indemnity was both confusing and unreasonable, which in turn forced Wal-Mart to pursue its legal remedy in court. As shown above, the first legal counsel to represent Schmidt, argued that the defense/indemnity provisions of section five (5)

7

did not apply because Plaintiff Moore did not appear to be actually "operating" the public payphone at the time of the incident. This Court quickly rejected that argument. Undeterred, Schmidt nevertheless testified at the April 12, 2012 bench trial that the first reason for not reimbursing Wal Mart's legal fees was because Ms. Moore as not operating the payphone at the time since there was no claim she was actually making a payphone call at the time the phone enclosure dislodged from the wall. Defendant Wal Mart request this Court re-affirm this reason for Schmidt's breach of contract lacks any basis in fact or law and similarly reject this reason for his continued breach of contract.

Second, Schmidt and his subsequent counsel continued with another reason for the breach with their attempt to rely on a "condition precedent" of paragraph five that the defense/indemnity requirement would not be triggered if Plaintiff's Moore's claim "arose out of" some negligence or intentional action of Wal Mart. For example, if Plaintiff's claim was caused by a Wal Mart employee striking the phone casing with a pallet of merchandise during stocking or stacking heavy merchandise on top of the phone casing. Throughout this entire case, the jury trial, the appeal and the subsequent bench trial, there was never been any such evidence ever offered or ever insinuated. Accordingly, Schmidt's second reason to justify his breach of contract should be rejected again by this Court because there is no credible proof Plaintiff Moore's claim arose out of any negligence or intentional act of Wal-Mart.

## H. **Schmidt Failed to Satisfy Burden of Proof of Condition Precedent**

The second reason put forth by Schmidt/Public Pay Phone Company to justify his refusal to reimburse Wal-Mart relies on the triggering of a condition precedent under contract law. Because Schmidt has asserted the condition precedent under Section 5 and defended the Third-Party Complaint on an allegation that Plaintiff's claim arose out of negligence or intentional conduct on the part of Wal-Mart, then general contract law is clear that Schmidt carries the burden of proof to establish the condition precedent has been triggered. *Williston on Contracts*, 3d. at § 667. The parties agreed to comply with the

law of California in interpreting the contract and the Appellate Courts in California have long held "where one party seeks to enforce another party's duty of performance, the burden of proof is placed upon the parties seeking enforcement, to prove the occurrence of the condition precedent." *Kaye v. Murray*, 2010 WL 1680187 (Cal. App. Ct. Sept. 27, 2010), (*citing Kadner v. Shields,* 20 Cal. App. 3d. 251 (1971).

In this case, Defendant Wal-Mart submits Schmidt/Public Pay Phone Company completely failed to satisfy his burden of proof that the condition precedent relied upon was somehow triggered by the vague and unsupported allegations of negligence and of prior notice of the allegedly dangerous condition. As previously stated, there is no proof whatsoever that Plaintiff's claim arose out of any actual conduct of Wal-Mart employees. Likewise the "notice" argument asserted by Schmidt/Public Pay Phone is insufficient to trigger the condition precedent under the contract law applicable in this case because the facts establish that Schmidt/Public Pay Phone had the same prior notice of the condition to the pay phone casing as Wal-Mart employees. Moreover, Schmidt/Public Pay Phone has the exclusive duty, experience, tools and expertise to make any necessary phone repairs. Finally, it was just as easy for Schmidt's employees to rope off or place caution cones around the allegedly dangerous condition of the phone as it would be for Wal-Mart since Schmidt/Public Pay Phone had prior knowledge through its employees or through its computer monitoring system for any damage, flags or "alarms" for this pay phone.

**I.**     **Schmidt's  Sophisticated Telephone Monitoring Software**

Of course, the obvious question in regard to Schmidt's argument of that Wal Mart had the first "notice" of a potentially dangerous condition is whether that alleged knowledge is even relevant under the facts and claims that remain because Schmidt and his employee had the same notice as Wal Mart of the potential harm. Schmidt admitted at the bench trial that his payphones are linked via a sophisticated computer program so that everyday the subject payphone sends electronic data to Schmidt's headquarters in Metairie, Louisiana. The pay phone automatically sends electronic status updates about

specific operations of the subject payphone, including the "operational mode" of the phone; amount of money of paid into the coin box; each phone call made or received; length of any calls; and (most significant) any "alarms or flags" about repairs that are needed to the payphone. Such alarms or flags would show Schmidt at his headquarters in Metairie when this phone enclosure was damaged or out of order and that Schmidt should send a repairman right away to check on the problem.

Schmidt and his employees were already placed on notice of any damaged condition to the payphone. More to the relevant issue, Schmidt's finger pointing at Wal Mart employees does not address the gravaman issue of whether he breached the subject contract. Even though Schmidt denies he had such prior notice of the alleged damage to the phone enclosure, the contrary evidence is compelling. For example, Schmidt admitted his computer software stored detailed data from the payphones which could be easily retrieved and printed for review. Despite receipt of two letters demanding the defense and indemnity central to Wal-Mart's Third-Party Complaint, (and a Third-Party Complaint served on him) Schmidt admitted he deleted this computer data before it could be received and examined by defense counsel. Wal Mart submits the Court should use this spoliation of evidence by Schmidt as a negative inference against Schmidt's defenses pursuant to Mississippi law. *Thomas v. Isle of Capri Casino*, 781 So.2d. 125 (Miss. 2001) (holding fact finder is free to draw general and negative inference from the act of spoliation, whether intentional or negligent spoliation).

Defendant Wal Mart submits Schmidt seems to be confusing the only remaining issue to bring this case to a conclusion, which is whether Schmidt breached his contract with Wal Mart or otherwise breach his duty under Mississippi law of common law indemnity. Schmidt is re-arguing the same allegations of "notice" as an element of Plaintiff Moore's premises liability claim against Wal Mart which was expressly rejected by the jury's verdict and this Court. The issue is not if or when these parties had notice of an allegedly dangerous condition but rather did Schmidt breach his legal duties

10

under the contract and Mississippi law.

**J.      Jury's Verdict Akin to Finding of No Negligence**

This Court's prior ruling on Defendant's Motion for Summary Judgment considered the request for a legal defense and indemnification but deferred final adjudication of this issue until the jury was afforded the opportunity to hear the evidence and render a verdict and held:

> At any rate, the Court concludes that a final resolution of these issues should properly wait until after the jury has had a chance to determine to what extent, if any, fault for Moore's injuries lies with Wal-Mart and/or PPC. The Court will therefore stay Wal-Mart's Motion for Summary Judgment at this juncture but will entertain any motions relating to the issue of attorney's fees and indemnification after the jury has spoken regarding fault for the underlying accident in this case.

The jury's verdict when considered with the Form of Verdict submitted for their consideration is confirmation that Defendant Wal Mart was not negligent and did not cause the subject incident with Plaintiff. Since it has been established by the jury that Wal-Mart is not negligent, and there is no suggestion of evidence that Wal Mart willfully caused the incident with Plaintiff, Wal-Mart is contractually entitled to full reimbursement of attorneys fees.

**K.      Revised Amount of Damages**

Because Schmidt persists in his breach of contact and will not voluntarily reimburse Wal Mart their attorney fees and expenses it is forced to pursue this matter in court. Exhibit WM-7 & 10 shows the current reimbursement owed to Wal Mart following the appeal and subsequent bench trial totals $72,613.17. Wal-Mart requests that this Court fully reimburse the total amount of the fees as damages to Wal-Mart pursuant to the express terms of the contract as well as the facts of this case and the jury's finding that the Plaintiff's claim did not arise out of the negligence or any intentional conduct on the part of Wal-Mart. The undersigned counsel is also compelled to emphasize the overwhelming majority of the attorneys fees and expenses was caused by the unreasonable positions, arguments and steadfast refusal of

Schmidt and his attorneys to pay the amounts owed for the legal defense of Wal-Mart which could have been avoided.

**L.     Reasonableness of Attorney's Fees**

Wal-Mart recognizes an award of attorney's fees also involves the court's consideration of the reasonableness of such fees. Defendant submits the fees and expenses incurred in this case were reasonable as shown by the detailed billing statements submitted by defense counsel showing a reasonable legal rate charged per hour as well as reasonable amount of time expended for the various legal work performed under the lodestar calculation method. (Ex. WM-7; WM-10). Defendant also submits the actually amount of legal fees incurred for this case demonstrates the reasons why retailers such as Wal Mart routinely require outside vendors to defend and indemnify them in the event the retailer is sued because of a claim involving the outside vendor's product or device even if the original claim may involved relatively minor injures. Upon consideration of the factors below and a comparison of similar decisions which affirmed an award of attorney's fees much higher than incurred herein, Defendant submits there is substantial evidence of the reasonableness of the fees requested.

Federal courts have set out several factors to be considered when determining whether attorney's fees are reasonable according to the lodestar method of calculating fees adopted by the United States Supreme Court. After calculation of the lodestar amount the Court may consider other factors as set forth in the decision of *Johnson v. Georgia Highway Express, Inc*. 488 F. 2d 714 (5th Cir. 1974). Mississippi courts have also adopted these guidelines when considering the reasonableness of an award of attorney's fees and conduct a similar analysis with the Federal Courts as well as guidelines from Rule 1.5 of the *Mississippi Rules of Professional Conduct. In re Gillies,* 830 So.2d 640, 645 (Miss. 2002). While all of the factors are not applicable to the case at bar, they are listed in their entirety below:

(1)     The time and labor required, the novelty and difficulty of the questions involved, and

           the skill requisite to perform the legal service;
(2)     The likelihood, if apparent to the client, the acceptance of the particular employment will preclude other employment by the lawyer;
(3)     The fee customarily charged in the locality for similar legal services;
(4)     The amount involved and the results obtained;
(5)     The time limitations imposed by the client or by the circumstances;
(6)     The nature and length of the professional relationship with the client;
(7)     The experience, reputation and ability of the lawyer or lawyers performing the services; and
(8)     Whether the fee is fixed or contingent.

*Id. See McKee v. McKee*, 418 So.2d 764 (Miss. 1982); *Mabus v. Mabus*, 910 So.2d 486 (Miss. 2005).

      Plaintiff's lawsuit was filed on December 11, 2006 and has been in active litigation for over five (5) years. The case has required the assistance of associate attorneys and paralegals in addition to the lead attorney. The pleadings index for Defendant includes over one hundred entries which included items such as the Motion for Leave to File Third-Party Complaint, Motion to Transfer Venue, Third-Party Defendants' Motion to Dismiss, Defendant's Motion for Summary Judgment appeal and even a "Motion for Declaratory Judgment" filed by Schmidt's first counsel, among other pleadings. This case involved extensive discovery and traveling expenses such as the corporate deposition of Third-Party Defendant in New Orleans and depositions in Batesville, Oxford, Indianola and Greenville, Mississippi. Additionally, the original trial setting of this matter was continued twice and this dispute was eventually tried over the course of three days. The parties also engaged in a mediation and a separate settlement conference with the Magistrate Judge and finally an appeal to the Fifth Circuit and a subsequent bench trial in April, 2012.

      Considering the third factor, defense counsel charged Wal-Mart a reasonable rate per hour of $140.00, and charges this same customary rate for Defendant's cases throughout the Northern District of Mississippi. Considering the sixth factor stated above, defense counsel retains a long business relationship with Wal-Mart whereby the undersigned counsel routinely represents Wal-Mart in cases involving personal injuries in one of its stores. Defense counsel has a fairly substantial amount of experience in

handling personal injury cases in this area, particularly premises liability actions, and has tried dozens of such cases. Finally, counsel charged Wal-Mart a fixed rate, agreed upon by Wal-Mart, for the legal services rendered. *Id*.

In *Raines v. Bottrell Ins. Agency, Inc*., the Mississippi Supreme Court upheld an attorneys fee award in the amount of $138,867.65 for a breach of contract claim against a former insurance agent who violated a covenant not to compete. *Raines v. Bottrell Insurance Agency, Inc*., 992 So.2d 642 (Miss. 2008). Similarly, in *Microtek Medical, Inc. v. 3M Company*, the Mississippi Supreme Court upheld an attorneys fee award in the amount of $223,031.09 base on a standard rate of $240.00 per hour in an indemnity action arising out of an allegedly defective product. *Microtek Medical, Inc. v. 3M Company*, 942 So.2d 122 (Miss. 2006). Even though the *Microtek* decision was modified on a separate legal issue, the attorneys fee award, which essentially quadruples the amount requested by Wal-Mart herein on a matter which was decided via Summary Judgment, was affirmed.

### III. CONCLUSION

Defendant Wal-Mart hereby requests judgment of this Court against Third-Party Defendant Robert Schmidt/Public Pay Phone Company in the amount of $72,613.17 for attorneys fees and legal expenses for his breach of contract and legal duties. Defendant request that this Court make a specific finding that Plaintiff Moore's claims did not arise out of any negligence of Wal-Mart as previously found by the jury in a response to the inquiry cited on remand by the Fifth Circuit and thereafter this case be finally closed.

**RESPECTFULLY SUBMITTED** this the 3rd day of May, 2012.

        **WAL-MART STORES, INC.**

        **By:**   **/s/R. Brittain Virden**
                **R. BRITTAIN VIRDEN, MBN 10022**
                **Attorney for Defendant Wal Mart**

14

**OF COUNSEL:**

**R. Brittain Virden**
**CAMPBELL DeLONG, LLP**
923 Washington Avenue
Post Office Box 1856
Greenville, MS 38702-1856
Telephone: (662) 335-6011
Facsimile: (662) 334-6407

**CERTIFICATE OF SERVICE**

    I, R. Brittain Virden, attorney for Defendant herein, do hereby certify that on **May 3, 2012**, I electronically filed the foregoing with the Clerk of Court using the CM/ECH system, which will send notification of such filing to the following: send notification of such filing to the following: Cynthia A. Stewart (cstewart@ms-lawyer.net)

    **/s/R. Brittain Virden**
    **R. BRITTAIN VIRDEN**
    **Attorney For Defendant Wal-Mart Stores, Inc.**
    **CAMPBELL DeLONG, LLP**
    **923 Washington Avenue (38701)**
    **Post Office Box 1856**
    **Greenville, MS 38702-1856**
    **Telephone (662) 335-6011**
    **Facsimile (662) 334-6407**
    **bvirden@campbelldelongllp.com**